UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF LAMONT JOHNSON, DECEASED, BY TALISA BROOKS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LAMONT JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF DETROIT, DETROIT POLICE OFFICERS TYLER NAGY AND RAUL MARTINEZ,<br><br>    Defendants. | Case No. 20-12791<br>Hon. Shalina D. Kumar |

_____

| | |
|---|---|
| Mark E. Boegehold (P38699)<br>The Thurswell Law Firm<br>*Attorney for Plaintiff*<br>1000 Town Center, Ste. 500<br>T: (248)354-2222/F: (248)354-2323<br>mboegehold@thurswell.com | Calvert Bailey (P42409)<br>*Attorney for Defendants*<br>2 Woodward Ave., Ste. 500<br>Detroit, MI  48226<br>(313) 237-3004<br>bailc@detroitmi.gov |

_____

# JOINT FINAL PRETRIAL ORDER

This matter having come before the Court for a pretrial conference pursuant to Fed. R. Civ. P. 16; and Mark E. Boegehold having appeared for Plaintiff, and Calvert Bailey having appeared for Defendants; the following Final Pretrial Order is hereby entered:

1. **JURISDICTION**.  The Court has jurisdiction over this matter on basis of federal questions involved, particularly 42 U.S.C. 1983 as well as amendments to the U.S. Constitution.   Jurisdiction is not contested by any party.

2. **PLAINTIFF'S CLAIMS**.  Plaintiff brings this case as a wrongful death suit against the Defendant Police Officers alleging excessive force and wrongful use of deadly force.  This action is also brought under 42 U.S.C. 1983 which allows for civil liability on state actors for violation of constitutional rights.  In excessive force cases such as this one, government actors are entitled to qualified immunity for their actions unless:

   1. They violate a constitutional right;
   2. The violation of the constitutional right was clearly established;
   3. The officers' conduct in violating the right was not objectively reasonable.

The U.S. Supreme Court in *Graham v. Conner*, 490 U.S. 386 (1989) held that excessive force cases are analyzed under the Fourth Amendment, in particular, the reasonableness standard of the Fourth Amendment.  The Fourth Amendment states "The right of the people to be secure in their possessions, houses, papers, and effects against <u>unreasonable</u> search and <u>seizure</u> shall not be violated . . ."

Excessive force is considered an "unreasonable seizure."

Deadly force may not be used unless an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.

Plaintiff brings this case under the Fourth Amendment as well as others in that it is Plaintiff's position that Defendants use of deadly force was not objectively reasonable, and that the right to be free from excessive force was a clearly established constitutional right at the time of the shooting.

On October 24, 2018, Lamont Johnson, a 44-year-old resident of the City of Detroit, was self-employed as an automotive mechanic, a skill he had acquired in the Navy.  Lamont (nicknamed School) and Talisa Brooks, the Personal Representative, had six children together.  Lamont was close to them and was, by all accounts, an excellent father.  Mr. Johnson had no criminal record other than common traffic violations.

On the weekends, he would visit his friend, Devin Irvin, who lived with his mother, Kimberly Irvin.  Normally several people would get together.  There would be drinking and, although Lamont was not known to use drugs, he would engage in smoking marijuana on occasion.

Lamont and Devin would routinely get into arguments when they became intoxicated, some of the arguments leading to "fights," but no one ever got hurt. The next day one would call the other and everything was fine. This behavior was routine and just part of their particular relationship. A mutual friend, Chelbi Gibson, was interviewed by police as to Lamont and Devin's relationship. She stated:

> "Q.   Is there a history between School (Lamont Johnson) and Devin?
>
> A.   Yes, they get drunk together and then they argue and fight. The next day they are cool."

On the night in question, Lamont became intoxicated at a party at Devin and Kimberly's home and had smoked marijuana as well. On this night, during their weekly argument and fight, Lamont pulled a knife on Devin after Devin pulled a gun on him. Lamont was too intoxicated to actually hurt anyone. Devin wrestled him to the ground, and no one was injured. Lamont went home and came back with a handgun. Lamont waived the handgun around and made drunken, threatening statements and even broke a window, but later left when another friend told him that he should go home. No one was ever shot, and no gun was ever fired. There was not even a bullet in the chamber of the gun. Lamont had merely engaged in drunken bravado, having consumed more alcohol than usual.

After the incident with the firearm, the police were called. Officers Tyler Nagy and Raul Martinez responded. They were told by a neighbor that Lamont, who had ridden his bicycle to the Irvin's that night, was leaving by way of the alley in back of an apartment building at 14930 Tireman. The two officers took off on foot to find Lamont. They rounded the rear of the apartment building into the dark alley. Lamont had been walking alongside his bicycle, in all likelihood too intoxicated to ride it, later having registered an Ethanol alcohol .152 (after a lengthy period of burn off) and THC, 6.6.

The officers, with flashlights and guns drawn, rounded the apartment building, saw Lamont, and immediately began screaming "Hands! Hands! Hands!" Mr. Johnson froze like a deer in headlights. The officers never identified themselves as police. The alley was dark, and Lamont had the beams of the officers' flashlights in his eyes, presumably preventing him from seeing. 2.5 – 3 seconds after coming upon Lamont, the officers both shot him to death.

The officers claim that Lamont was going for a gun in his waistband. However, their version is completely contradicted by the officer's body cam films which show that Lamont never moved. He did not have time to comply with their commands by raising his hands or to go for a gun. 2.5 - 3 seconds would not have been enough time for him to perceive what was even happening, and then react by either raising his hands, or going for a gun. In his intoxicated state, most assuredly all he saw were lights in his eyes and men screaming at him for the 2.5 – 3 seconds before being shot.

Body cam film from both officers can be watched repeatedly, freeze framed, photographed, and analyzed frame by frame and never will Mr. Johnson be seen to have moved.

Although the film is dark, it is clear that his right hand is holding the bike. His left arm is in darkness but his left shoulder, which can be seen, never moves. Defendant's police expert witness, Steven Ashley, testified that he watched the films dozens of times and concluded he did not see Lamont move at all. Further supporting the video, which shows he never moved, is the fact that his gun was later found without a bullet in the chamber and was snapped into a holster. It was not even ready to be fired.

Essentially, the officers rounded the corner, guns drawn, shined their flashlights in Lamont's face and began screaming at him. Lamont stood there, frozen, just beginning to take in what was happening, when he was shot to death.

3. **DEFENDANTS' CLAIMS**.

1. On October 24, 2018, at approximately 8:13 p.m., Defendants Tyler Nagy and Raul Martinez, Detroit Police Officers, received a radio run of a felonious assault at the address of 14930 Tireman in the City of Detroit.

2. At the scene the officers spoke with the complainants, Kimberly Irvin and Devan Irvin, who stated that Plaintiff's Decedent Lamont Johnson initially tried to stab Mr. Irvin with a knife.

3. Plaintiff's decedent chased Mr. Irvin to the apartment of Derrick Myers where he pushed in the air conditioning unit of Mr. Myers and damaged his screen door in an attempt to get at Mr. Irvin and then left the scene.

4. The Officers also spoke with Derrick Myers who confirmed Mr. Irvin and Ms. Irvin's statements. Ms. Irvin and Mr. Irvin also stated that Plaintiff's Decedent returned and pointed a handgun at them and broke their window before fleeing on a bicycle.

5. As the officers were returning to their scout car, they were informed by an unidentified neighbor that Plaintiff's Decedent had returned to the scene. The officers ran back to the location and in the alleyway spotted Plaintiff's Decedent

6. Having received information that Plaintiff's Decedent was armed and had assaulted 3 individuals, the Officers gave several commands that he show his hands. He did not comply and reached into his front waistband. Fearing for their safety, the officers fired several shots at Plaintiff's Decedent which took effect.

7. That the actions attributable to Defendants did not violate any known constitutional rights of Plaintiff's decedent.

8. That the sum demanded by Plaintiffs in their Complaint for their alleged injuries is excessive.

4. **STIPULATION OF FACTS**.  The parties stipulate that the police were called to 14930 Tireman in Detroit at approximately 8:30 p.m. on October 24, 2018.

5. **ISSUES OF FACT TO BE LITIGATED**.

    1. Did the Defendant Officers violate a constitutional right?

    2. Was the officers' conduct in violating the right objectively reasonable?

    3. Whether Lamont Johnson posed an immediate threat to the safety of the officers or others.
    4. Whether Lamont Johnson was actively resisting arrest or attempting to escape arrest by flight?

    5. Did the officers have probable cause to believe Lamont Johnson posed a threat of serious harm to either of the officers or others?

    6. Did Lamont Johnson reach for a gun?

7. Did Lamont Johnson have the ability to cause serious physical harm to the officers or others?

8. Did the officers identify themselves as police officers?

9. Did the officers have an objectively reasonable belief that Lamont Johnson, at the moment immediately before the shooting, posed an imminent threat of serious physical harm to him or others?

10. Did Lamont Johnson have the time to perceive and react to the officers' presence to reach for and brandish a firearm?

11. Was there an indication that Lamont Johnson was willing to and was about to use the weapon to harm officers or others?

12. Did the officers give a warning prior to asserting the use of legal force?

13. Did the estate of Lamont Johnson sustain damages? And, if so, what is the amount of damages to adequately and fairly compensate the estate?

14. Are punitive damages warranted? If so, what is the amount of damages to adequately prevent similar future conduct?

15. Whether the actions of Defendants violated Plaintiffs' federal civil rights.

16. Whether Defendants used excessive force.

17. Whether Defendants' safety was endangered by the actions of Plaintiff's decedent?

18. Whether Defendants acted in defense of themselves and others.

19. Whether Defendants are entitled to qualified immunity.

20. The amount of damages.

6. **ISSUES OF LAW TO BE LITIGATED.** None anticipated other than Motions in Limine.

1. Whether the actions of Defendants violated Plaintiff's civil rights under 42 U.S.C. 1983.

2. Whether Defendants are entitled to qualified immunity.

3. Was there probable cause for the investigation of Plaintiff's decedent?

4. Was there probable cause for the arrest of Plaintiff's decedent for outstanding warrants?

7. **EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL.** None anticipated beyond Motions in Limine.

Defendants object to testimony from a substitute economist d whose identity was not disclosed during discovery, and for whom Plaintiff has not made expert disclosures as required by the Federal Rules of Civil Procedure. Defendants have filed a Motion in Limine to Preclude this witness From Testifying and/or Limit his Testimony. Defendants also object to any witnesses for whom the Plaintiff has not made expert disclosures as required by the Federal Rules of Civil Procedure.

8. **WITNESSES.**

   **PLAINTIFF'S WITNESSES:**

   **Will Call:**

   1. Devonte Brooks, 12907 Hazelton, Detroit, MI  48223

   2. Jamon Brooks, 23545 Columbus Ave., Warren, MI  48092

   3. Tavares Brooks, 7330 Drew Circle, Apt. 3, Westland, MI  48185

   4. *Michael Grant, Expert Economist

   5. Lamont Johnson, Jr., 12907 Hazelton, Detroit, MI  48223

   6. Leonoreie Johnson, 12907 Hazelton, Detroit, MI  48223

7. *David A. King, Police Liability Expert, 1318 Cameroon Ct., The Villages, FL 32162

8. P.O. Raul Martinez 2471

9. P.O. Tyler Nagy 3707

10. Charlene Shepherd, Code 4712 – Forensic Technician

11. *Dr. Dennis Simpson, PhD., Toxicologist Expert, CD Simpson and Associates, Inc., PO Box 579 Portage, MI  49081-00579

12. *Kenneth A. Solomon, Accident Reconstructionist, Police Expert, Incident Reconstruction Perception and Reaction Time, 5324 Canago Ave., Woodland Hills, CA  91364. Will provide timing analysis of the Defendants' action and opinions on perception and reaction time.  Will provide expert testimony concerning liability, including, but not limited to police force, police practices and procedures and violation, constitution violations, how the encounter with Lamont Johnson was handled and what should have been done or *Babek "Bob" Malek, Expert, 5324 Canoga Ave., Woodland Hills, CA  91364.  Video analysis, scene and incident reconstruction perception and reaction time, and related analysis.

**May Call:**

1. Talisa Brooks, 15514 Prest, Detroit, MI  48227

2. Dawonn Burgess, 14938 Tireman, Detroit, MI

3. Ingrid Ellis, 14900 Tireman, Apt. 1, Detroit, MI

4. Devon Ervin, 18656 Faust, Detroit, MI 48219

5. Kimberly Ervin, 18656 Faust, Detroit, MI 48219

6. Matthew Forrest, Attorney, Detroit Police Officer's Association

7.  Chelbi Gibson, 14900 Tireman, Apt. 2, Detroit, MI

8. Chareie Johnson, 12907 Hazelton, Detroit, MI  48223

9. Demetrius Johnson, 12907 Hazelton, Detroit, MI  48223

10. Linn Johnson, 9500 Grand River, Detroit, MI  48204

11. Malon Johnson, 12907 Hazelton, Detroit, MI  48223

12. Regina Mason, 8142 Marlowe, Detroit, MI  48228

13. Derek Myers, 14936 Tireman, Detroit, MI

14. Sandi Schwann Shamily, Dearborn, MI  48126

15. Leonore A. Sinkfield, P.O. Box 3288, Melvindale, MI  48211

16. City of Detroit Police Officers, 1301 Third St., Detroit, MI:

    PO Ahmed Abbelmouty
    PO Hedaivah A. Aboubaker
    PO Allen 1214
    PO Moetaz Almoamin
    PO Rifat Talib Al-Rickabi
    PO Josif Angelouski
    PO Angy
    PO Lamar Armstrong
    PO Ami Atieo
    PO Angelique Chadwick Bills
    PO Michael Bridson 2005
    Sgt. Eric C. Bucy S-13
    Sgt. Jason Burke
    PO Eric Campbell 586
    PO Charielle Cardenas
    PO Carlson
    Lt. Laurie Carter L-205 – Internal Affairs
    PO Patrick Cecile W1477 – Homicide Task Force
    PO Amal Chalhoub
    PO Ibrahim Chalhoub
    PO Mike Abdul Chaloub
    PO Mona Chalhoub

PO Tarek Chalhoub
PO Royd Coleman
Sgt. Alexander Collirin 0272
PO Raymond Diaz 1137
PO Brady Druenson
Sgt. Todd Eby S-678 – Homicide Task Force
PO Sumayya El-Achkar
Matthew Forrest (Attorney) – DPO
Lt. Kenneth Gardner
PO Brian T. Gibblings 2633
PO Chelbi Gibson
PO Joel Gilbert 2580
PO Joel Glotfelty 2774
PO Quintina Glover
Lt. Jeffrey Hahn L-17 – Force Investigation
PO Mike Hamad
PO Royer Hernandez 3711
PO Serratos Hernandez
PO T.V. Hill
Sgt. Terica Holston S-824 – Force Investigation
PO Ivdul Ildarrjj
Sgt. Allan Jacokes S-918 –Force Investigation
Det. Moises Jimenez – Homicide Task Force
PO Debbie Johnson
PO Elaine Kelly
PO C.E. King
PO Errol D. King 1060
DPO Cassandra Lee
PO Austin Long 1914
PO Jason Lord 4540
PO Thomas E. Love
Trooper Rick Lutz
Det. Khary Mason
Det. Ryan Mason
Commander Michael McGinnis- Professional Standards Bureau
Megan Miller, Code 4712– Forensic Technician
Sgt.Kelly Mullins S-110, Force Investigation
D. K. Murray
PO Frank Opett 3649
PO Alvis Own

        PO Cecile Patrick
        Lt. Howard Phillips L-38, Force Investigation
        PO Wayne Prichett
        PO Lloyd Provitt
        PO Cesar Quinonez 4652
        DPO Kiesha Reed
        Gerald D. Robinson
        Sgt. Shannon Robinson, S-1587, Force Investigation
        DPO Justin Sampson
        Lt. Richard Sanchez
        Lt. Carrie Schultz L-96
        PO Sara Schulz
        PO Sara Schulz, Forensic Technician
        Matthew L. Scott
        Cpt. John Serda, Homicide Task Force
        PO Hernandez Serratps
        PO Erica Somers
        D. M. Spidell
        Cpt. Gary Sroka 2400 – Evidence Technician
        PO Deborah Stinson
        PO Lance Sullivan
        PO Timothy Sumpter 2722
        Sgt. Eby Superion
        PO Clysbie Vining
        PO Nicholas Wagner 4702
        PO Iesha Washington
        Det. Paytra Williams
        Marlon C. Wilson, Professional Standards Bureau
        PO Rhonda Winto
        PO Jeremy Woods 4924

17. Michigan State Police, 3044 W. Grand Blvd., Detroit, MI 48202:
    Kevin Chapo, Police Analyst
    Det/Trooper Dionandre Doaks
    Sgt. Phillip Duplessis
    MSP Analyst Kevin Chapo
    Det. Trooper Henry – Homicide Task Force
    Det/Trooper Mark Lambert – Homicide Task Force
    Det/Trooper Richard Lutz
    Det. Trooper Kevin Pirvu – Homicide Task Force

    Det. Trooper James Plummer 881, Homicide Task Force
    Det/Trooper Erica Somers

18. Oakland County Crime Lab:

    P.O. Todd Ebby
    P.O. Gardner
    P.O. Lance Sullivan

19. NMS Labs, custodian of records, or other individuals who had contact with plaintiff may be called as expert witnesses within their areas of expertise, including but not limited to:

    *Paul Miller, Certifying Scientist

20. *Lokman Sung, MD, 1300 E. Warren Ave., Detroit, MI 48207, Assistant Medical Examiner

21. * Bader J. Cassin, M.D., Expert Pathologist, Medical Examiner, P.O. Box 15249, Detroit, MI 48215.

22. *All treating, consulting, or evaluating health care providers, custodian of records, or other individuals at Sinai Grace Hospital, Detroit, MI - who had contact with plaintiff may be called as expert witnesses within their areas of expertise, including but not limited to:

    *Dr. Seaman
    *Dr. Sarah Ubaid

23. Any and all employees, agents, or servants, custodians of record, records keeper or representatives, past, present or future, of NMS Labs, 3701 Walsh Rd., Willow Grove, PA 19090, may be called as expert witnesses within their areas of expertise.

    *Paul Miller, Certifying Scientist

24. Records keeper and representatives of Sinai Grace Hospital, Detroit, MI, concerning bills and reasonable and customary issues.

25. Custodian of the records of Federal Form 1099 for any experts used by Defendant, as issued by any entity for whom the expert has performed any services, or as issued by Defendant.

26. *National Weather Service Representative and keeper of the records.

27. *Edward Primeau, Primeau Forenscis, Video Enhancement, Forensic Video Analysis, Scene Reconstruction, Incident Reconstruction, 1703 Star-Batt Dr., Rochester Hills, MI  48309

28. *Michael Primeau, Primeau Forenscis, Video Enhancement, Forensic Video Analysis, Scene Reconstruction, Incident Reconstruction, 1703 Star-Batt Dr., Rochester Hills, MI  48309

29. *Dr. William King, Economist, 912 Centennial Way, Ste. 320, Lansing, MI, 48917

30. *Jamie Fields, Police Liability Expert, 555 Brush  St., Ste. 2409, Detroit, MI  48226

31. *Aaron Westrick, Police Liability Expert, Lake Superior State College, 650 Easterday Ave., Sault St. Marie, MI  49786

32. *Timothy P. Robins, Police Liability Expert, Incident Recreation/Scene Recreation, Perception Reaction Data, M Crash Group, 4106 Wilder Rd., #290, Bay City MI  48706

33. *James Fuller, Vocational Rehabilitation Expert, P.O. Box 20724, Ferndale, MI  48220, Expert

34. *Dr. Steven Newman, MD, Neurologist

35. *Dr. Paul Begeman, Bio-Mechanical Engineer

36. *Dr. Steve Ziemba, Liability Expert, 20846 E Glenn Haven Circle, Northville, MI 48167

37. *Dr. Walter Cygan

38. *Dr. Brad Seawick, PhD

39. *Dr. Werner Spitz, Expert Pathologist, 23001 Greater Mack Ave., St. Clair Shores, MI 48020

40. *Thomas Green, Accident Reconstructionist

41. *Kirk Lee, Life Care Planner, 23077 Greenfield Rd., Ste. 185, Southfield, MI 48075

42. *Karen Kaptur, R.N., Nursing/Attendant Care

43. *Any and all employees, agents, or servants, past, present or future, of W.B. Investigations, Inc., 24120 Meadowbrook Rd. Suite 210 Novi, MI 48375, may be called as adverse witnesses, including but not limited to:

    Wayne V Bullen

44. *Wanda A. Lee, Investigator

45. *Dan Lee, Accident Reconstructionist, 5445 N. Okemos Rd., East Lansing, MI 48223

46. *Tom Bereza, Accident Reconstructionist

47. *John Cavanaugh, Biochemical Engineer

48. *Dr. Gerald A Shiener, MD., Psychiatry, 251 E. Merrill St., Suite 203, Birmingham, MI 48009

49. All employees, maintenance personnel, managers, agents, contractors, and representatives of Defendants who may or may not be identified in answers to interrogatories.

50. Any and all other past physicians, technicians, therapists, nurses or other medical personnel who provided care and treatment to Plaintiff under the direction and control of Plaintiff's treating physicians, who are not yet known but who may become identified during discovery and/or trial.

51. Any and all friends, relatives of Plaintiff who will testify as to Plaintiff's inability to conduct daily activities and social activities.

52. All persons named during discovery, including without limitation,

interrogatories and answers, depositions, answers to Requests to Admit, responses to requests for production.

53. All persons whose depositions have been or will be taken.

54. All persons who signed discovery responses on behalf of Defendant.

55. Any and all persons, entities and/or experts identified on any of the parties witness lists are incorporated herein by reference.

56. Plaintiff incorporates by reference all of Defendant's witness lists and disclosures.

57. All witnesses listed and/or identified by any party during discovery and/or trial.

58. Any and all necessary rebuttal witnesses.

59. Records keepers and representatives concerning bills and reasonable and customary issues for all witnesses and facilities that treated Plaintiff.

60. Records keepers for all witnesses listed on all parties witness lists.

61. All names included in police investigations, and use of force reports.

**DEFENDANTS' WITNESSES:**

**Will Call:**

1. Tyler Nagy
2. Raul Martinez
3. Carrie Schultz
4. Terica Holston
6. Kimberly Ervin
7. Devin Ervin
8. Derrick Myers
9. Steven Ashley

**May Call:**

1. Megan Miller
2. Charlene Shepherd

  3. Joel Glotfelty
  4. Cesar Quinonez
  5. Ingrid Ellis
  6. Chelbi Gibson
  7. Kevin Pirvu
  8. James Plummer
  9. Kevin Chapo
10. Todd Eby
11. Erica Somers
12. Mark Lambert

## DEPOSITIONS

Defendants intend to present the expert testimony of Steven Ashley via De Bene Esse Deposition.

9. **EXHIBITS.**

   **Plaintiff's Exhibits**

   1. Plaintiff incorporates by reference all evidence set forth in Defendant's Rule 26(a)(1) disclosures exhibit list, and otherwise produced by Defendant to Plaintiff in the within case.

   2. Medical records from Sinai Grace Hospital.

   3. Body cam and vehicle videos from P.O. Tyler Nagy, P.O. Raul Martinez, and all police officers.

   4. All police videos.

   5. All police photos.

   6. Final Use of Force Report

   7. Any and all relevant CAD reports

   8. Activity logs of all officers listed herein

9. Sunguard and Crisnet reports of officers listed herein

10. Medical Examiner's Autopsy Report regarding Lamont Johnson

11. Photos of scene.

12. Family photos of Lamont Johnson.

13. Use of Force report written by Defendant's expert, Steve Ashley

14. Entire Police and Investigation Report

15. Funeral Bill

16. Tax Returns

17. Sinai Grace Bill

18. Death Certificate

19. Still photos from police videos

20. Report of B. Michael Grant

21. Plaintiff's Expert Reports

22. Toxicology Articles

23. Blood Alcohol Effects Chart

24. Perception and Reaction Time Chart

25. Perception and Reaction Time Articles

26. Expert Files

27. Damages Chart

28. Life Expectancy Report/Table

29. Police Scene Photos

30. Scene Diagram

31. Map of Area of Shootings

32. Evidence Log, Descriptions, and Locations

33. Evidence Photos

34. Detroit Police Standards, Orders, and Policies

35. Detroit Police Use of Force Directives

36. 911 Tapes

37. Use of Force Spectrum

38. Perf Report on Use of Force

39. IACP Training Key Regarding Use of Force

40. Terica Hudson Initial Report

41. Expert CVs

**Defendants' Exhibits**

1. Incident Report
2. Activity Logs
3. Photos from scene.
4. Reporting Officer Narratives
5. CV of Steven Ashley
6. Body Cam Video of Tyler Nagy
7. Body Cam Video of Raul Martinez
8. Investigator's report
9. Wayne County Medical Examiner's Summary

10. **DAMAGES.**

Plaintiff claims all damages allowable under a Michigan Wrongful Death Act as well as punitive damages.  Specifically, Plaintiff claims:

1. Reasonable funeral and burial expenses, $4, 819.00.

2. Hospital bill to be determined.

3. Reasonable compensation for pain and suffering, while conscious undergone by the deceased during the period intervened, treated, injury and death.

4. Damages for the loss of financial support and loss of society and companionship of the deceased.

11. **TRIAL.**

    A. **Jury or Nonjury** - This is a jury trial.

    B. **Estimated length of trial**

       Estimated length of Plaintiff's' proofs – 5-7 days.

       Estimated length of Defendants' proofs – 2-3 days.

12. **SETTLEMENT.**  The parties have conferred and considered the possibility of settlement at a Settlement Conference held in the Federal Court on February 23, 2023.  The parties have not discussed settlement since that time.  There are no plans for further discussions.

    Counsel has conferred and considered the possibility of settlement and though settlement has not been reached, both parties are open to further discussions.
    (d) **FILING OF TRIAL BRIEFS, FINDINGS AND JURY INSTRUCTIONS.**  Trial briefs and request for jury instructions must be filed on the first day of trial.

    (e) Each party acknowledges that the Court may assess juror expenses under LR 38.2.

Date: March 4, 2024

                                                s/Shalina D. Kumar
                                                Shalina D. Kumar
                                                United States District Judge

Stipulated and Agreed:

/s/ Mark E. Boegehold                /s/ Calvert Bailey
   Mark E. Boegehold (P38699)        Calvert Bailey (P42409)
   Attorney for Plaintiff                  Attorney for Defendant